GONDRAND SHIPPING CO., INC. *v.* UNITED STATES

No. 6088.—Invoices dated Budapest, Hungary, October 3, 1938, etc.
Certified October 3, 1938, etc.
Entered at New York, N. Y., October 24, 1938, etc.
Entry No. 9644, etc.

(Decided January 19, 1945)

*Lamb & Lerch* (*John G. Lerch* and *Thomas J. McKenna* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, special attorneys), for the defendant.

TILSON, Judge: The appeals listed in schedule A, hereto attached and made a part hereof, involve the proper dutiable value of certain wearing apparel imported from Hungary. At the trial of the case the record in *Gondrand Shipping Co.* v. *United States*, Reap. Dec. 5837 was admitted in evidence herein only insofar as the blouses in the instant case are concerned and the plaintiff then offered the testimony of the importer and the general director of the exporting company of the merchandise covered by these appeals.

It was agreed between counsel that the merchandise on the invoices covered by these appeals was appraised on the basis of export value.

My former decision reported as Reap. Dec. 5837 was affirmed by the appellate division of this court in Reap. Dec. 5970, and as to the merchandise now before me, which was covered by my former decision, I shall follow my former decision. However, there is involved in these appeals a number of items that were not covered by my former decision, and it was as to such different items that the testimony of the two witnesses was directed.

The importer testified that the prices shown on the invoices were the prices paid by him, and the general director of the exporting company testified that such prices were the prices received by him

for the merchandise.   The general director of the exporting company also testified that:

R. Q. Mr. Horvath, these prospective buyers that came to your place, they looked over the whole line that you had there, did they?—A. Yes.

R. Q. And, you had samples of each item?—A. Yes.

R. Q. And, did you offer to them at the same price that you offered George Horvath of New York?—A. Yes.

R. Q. In the same quantities?—A. Yes.

R. Q. And, each of the items we have on these invoices?—A. Yes.

\*         \*         \*         \*         \*         \*         \*

R. Q. Mr. Horvath, when you were answering Mr. Auster's questions, you said that you offered to the United States; that people came there in the summer and you offered it to them.   Who were those people?—A. These were the buyers from the department stores here in New York.

R. Q. Such as Macy's, Bloomingdale's or Gimbel's—and they were actually in your place from time to time?—A. Yes, some took samples and promised orders.

\*         \*         \*         \*         \*         \*         \*

R. X Q. Was it a man or a woman from Macy's?—A. Not from Macy's only.

R. X Q. I am talking about Macy's now.   Who came from Macy's?—A. The buyer is not only from Macy's.   He buys mostly for five or six department stores because these people as in Paris or in Vienna or in Prague have offices and from these offices come always somebody and some from New York together.   I cannot remember the names because that was not today, it was not a year before.

\*         \*         \*         \*         \*         \*         \*

R. X Q. You will remember only the prices you sold for George?—A. That was the price for everybody.

Upon a consideration of the entire record I find that Budapest, Hungary, is the principal market for merchandise, such as or similar to that here involved, that the usual wholesale quantity is from one-half to three dozen.   The evidence also indicates that the price for this merchandise does not vary according to the quantity sold, which would eliminate any question as to wholesale and usual wholesale quantity.   The record also shows that the entered prices represent, as to all the merchandise, the price at which the same is freely offered and sold to all purchasers in the principal market of Hungary in the usual wholesale quantities and in the ordinary course of trade.   I therefore find and hold the proper dutiable export values of all the merchandise on the invoices covered by said appeals to be the entered values.   Judgment will be rendered accordingly.